Jasen, J. (dissenting in part).
While I agree with the court that the inquiry is within the jurisdiction of the Deputy Attorney-General and that documents subpoenaed bear a reasonable relationship to the subject matter under investigation, I cannot agree with the majority’s conclusion that the Deputy Attorney-General lacks authority to take temporary custody of the relevant documents in pursuance of his lawful investigatory authority.
In contrast to Matter of Heisler v Hynes (42 NY2d 250, decided herewith), which dealt with the plenary investigatory authority of Grand Juries, the issue in this case turns on authority conferred on the Deputy Attorney-General by virtue of subdivision 8 of section 63 of the Executive Law. The *248 statute provides that, whenever required by the public interest, the Attorney-General may, with the approval of the Governor, and when directed by the Governor, shall "inquire into matters cncerning the public peace, public safety and public justice.” In 1975, in response to growing concern as to the quality of care provided by private nursing homes receiving public financial assistance, a Deputy Attorney-General was appointed to conduct an inquiry into possible criminal violations in connection with or related to the management, control, operation or funding of any nursing home or health-related facility. We have concluded that this investigation is a proper exercise of the authority conferred by subdivision 8 of section 63 of the Executive Law. (Matter of Sigety v Hynes, 38 NY2d 260.) In pursuance of his statutory authority, the Deputy Attorney-General is explicitly authorized "to subpoena witnesses, compel their attendance, examine them under oath before himself or a magistrate and require the production of any books or papers which he deems relevant or material to the inquiry.”
I cannot agree with the court’s conclusion that the right to compel the production of relevant books and records does not include the right to inspect such records and retain them for a reasonable time in furtherance of the lawful investigation. The Legislature did not intend the right to produce be as hollow and barren as it is interpreted by the majority. In my view, the great legislative concern with matters of peace, safety and justice indicates an intention to confer sufficient authority on the Attorney-General and his designated deputies to permit them to conduct meaningful inquiries in conjunction with lawful investigations. Thus, the Legislature provided that the Deputy Attorney-General should have access to any books or papers he deems relevant or material to the inquiry. Without authority to inspect, study, analyze and retain relevant or material documents, most investigations would surely fail. Yet, this, I submit, is the consequence of the court’s decision.
The fact that, in several instances, the Legislature explicitly conferred upon established regulatory agencies the authority to audit the books and records of the enterprises to be regulated is scarcely relevant to this case. We do not deal here with regulatory agencies, whose jurisdiction is very limited, but with the office of the Attorney-General and his power and *249 duty to investigate into matters touching the public peace, safety and justice. There are obvious differences between a statute authorizing exceptional investigations and statutes authorizing regulatory agencies to conduct positive audits. In fact, the point made by the majority is actually favorable to the argument advanced by the Deputy Attorney-General. If the Legislature was sufficiently concerned to authorize limited audits of various race tracks, as noted by the majority, then how much more was the Legislature concerned when it authorized the Governor to direct full-scale investigations directly necessitated by the public welfare? Further, we are not concerned here with the power to audit. The Deputy Attorney-General seeks access to the records of the petitioner in order to assist him in his search for possible criminal violations.
The operation of nursing homes is a matter of grave public concern. Particularly in the past few years, attention has been focused on the maltreatment of elderly and infirm patients on the part of nursing home operators more interested in profit-making than in delivering quality health care services. The State has an important interest in protecting a particularly vulnerable class of citizens from the consequences of fraud and overreaching. Indeed, the State itself has been victimized by fraudulent claims made on the public treasury by nursing home operators. The State presently stands to lose substantial amounts in Federal assistance because of allegedly inadequate supervision of nursing home operators. As we said in Matter of Sigety v Hynes (38 NY2d 260, 266, supra), "[widespread corruption in the nursing home industry, care of the elderly and infirm and compensation for that care from the public treasury are 'matters concerning the public peace, public safety and public justice’ ”. It is regrettable, therefore, the court has strained to so construe the provisions of subdivision 8 of section 63 of the Executive Law as to strangle an inquiry of manifest public importance. The statute should be read in a commonsense manner and, in my view, the public interest requires nothing less.
Accordingly, I dissent and vote to affirm the order of the Appellate Division.
Chief Judge Breitel and Judges Gabrielli, Jones and Wachtler concur with Judge Fuchsberg; Judge Jasen dissents in part and votes to affirm in a separate opinion in which Judge Cooke concurs.
*250 Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.